[No. 1995-1. Division One. January 10, 1975.]

LOUIS GAZIJA, *Respondent*, v. NICHOLAS JERNS CO., *Appellant*.

*Murray, Dunham & Waitt* and *Robert K. Waitt,* for appellant.

*Dodd, Hamlin & Coney, P.S.,* and *Robert E. Ordal,* for respondent.

WILLIAMS, J.—Louis Gazija brought this action against Nicholas Jerns Co. to recover on an insurance policy for the value of his nets and other fishing gear aboard his boat, the *Marsha Lynn,* which was lost by fire at sea. The cause was tried to the court and a jury and resulted in a verdict for Gazija. Jerns appeals from the judgment entered thereon.

The controlling issue before this court is whether there was sufficient evidence supporting Gazija's claim to take the case to the jury. The facts which the jury had a right to believe are these: In 1954, Jerns, an insurance agency, caused an inland marine fishing gear policy to be issued to Gazija, protecting him against the loss of his fishing gear without restriction as to its location. Gazija used his gear 12 months of each year. In 1958, he bought the *Marsha Lynn* and continued to use the same gear. Each year, he renewed the insurance policy with Jerns by paying the invoice, which that agency sent to him every December.

During this period, Jerns had been servicing an insurance policy for Gazija's father, which covered his fishing gear only while it was stored in a locker at a Port of Bellingham webhouse. The elder Gazija fished his boat, the *Louie G,* only part of each year, and stored the gear in the webhouse when he was not fishing. He died in 1962, and his widow became the owner of the *Louie G* and the gear. In due course, the "webhouse" policy was endorsed to Mrs. Gazija, and she kept the policy in force until December of 1965. At that time, the Jerns agency renewed the policy in Louis Gazija's name. In 1966, the *Louie G* was sold to a

partnership composed of Louis P. Gazija and Calvin H. Stephens.

In January 1966, two critical events occurred: On the 13th, another insurance agency, Ireland and Bellingar, issued an inland marine policy covering fishing nets and gear wherever located to Gazija and Stephens. On the 17th, Jerns sent Gazija's inland marine policy to the issuing insurance company with the following memo:

> Enclosed is above policy for flat cancellation. Insured sold the boat and nets the first of the year so no longer requires coverage on the nets.

The policy issued to Gazija and Stephens was cancelled in 1968. When the *Marsha Lynn* was lost in March 1970, the only policy in effect was the one insuring Gazija against loss while her gear was stored in a Port of Bellingham webhouse.

The evidence is conflicting as to whether Gazija did bring the inland marine policy into the Jerns agency and authorize its concellation. A Jerns employee, who was called to testify, said that Gazija did bring the policy in for cancellation, and attempted to support this testimony with the memo of transmittal above quoted. The Jerns agency invoices on the webhouse policy which Gazija paid until the loss listed coverage for "fire and lightning on fishing gear, Port of Bellingham Webhouse No. 4."

Gazija denies that he cancelled the insurance and points out that because he fished the *Marsha Lynn* 12 months of the year, the webhouse policy, which initially covered his father's gear when in the webhouse, afforded no protection to the gear aboard the *Marsha Lynn*. As to the inland marine policy issued through Ireland and Bellingar, Gazija states that he wished to keep the accounts for the *Marsha Lynn* separate from the accounts of the *Louie G* which he operated with Stephens. Gazija did prove that the premiums for the inland marine policy and the webhouse policy were about the same, and that at the time of the cancellation, Jerns knew that he was insured by one policy for

loss of his gear wherever located as well as one covering loss only when the gear was in the webhouse.

█ Of course, it was the function of the jury to pass upon the credibility of the witnesses and to draw reasonable inferences from the evidence. RCW 4.44.090; *Arthurs v. National Postal Transp. Ass'n,* 49 Wn.2d 570, 304 P.2d 685 (1956); *Delaski . v. Northwestern Improvement Co.,* 70 Wash. 143, 126 P. 421 (1912). The evidence is sufficient to support a reasonable inference by the jury that Gazija did not authorize Jerns to cancel the inland marine policy and that Jerns wrongfully did so.

Jerns contends that Gazija's claim was barred by the statute of limitations because the inland marine policy was cancelled more than 3 years before the loss. The pertinent limitation statutes are:

> Commencement of actions limited—objections, how taken. Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute; but the objection that the action was not commenced within the time limited can only be taken by answer or demurrer.

RCW 4.16.010.

> Actions limited to three years. Within three years:
>
> (2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated;

RCW 4.16.080.

█ Gazija's cause of action did not accrue until he knew or should have known that he had a right to sue. *Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969); *Kundahl v. Barnett,* 5 Wn. App. 227, 486 P.2d 1164 (1971). He regularly paid the premiums for insurance upon the gear of the *Marsha Lynn* right up to the time of the loss. The jury, as shown by its verdict, decided that these payments were applied to the wrong policy through the fault of Jerns. The

542

cause of action accrued when Gazija discovered the mistake. The question of when Gazija knew or should have known of the wrongful cancellation was not presented to the jury because Jerns did not request an instruction in that regard.

The judgment is affirmed.

SWANSON, C.J., and HOROWITZ, J., concur.

Petition for rehearing denied February 20, 1975.

Review granted by Supreme Court May 23, 1975.